JAMES K. TERWELP *et al.*, Plaintiffs and Counterdefendants-Appellees, *v.* JAMES LEE SASS *et al.*, Defendants and Counterplaintiffs-Appellants.— (Adams County *et al.*, Defendants.)

Fourth District   No. 4—82—0328

Opinion filed December 23, 1982.

Chet W. Vahle, of Quincy, for appellants.

Goehl and Schuering, of Quincy, for appellees.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

The case at bar is in the nature of the classic encroachment and boundary dispute resulting in a feud. Apparently, the parties are willing to spend endless time and money in furtherance of this feud. The plaintiffs-counterdefendants-appellees (plaintiffs) constructed a barn which lay in part across a north-south center section line. The plaintiffs brought an action for temporary and permanent injunctive relief seeking to prevent defendants from interfering with plaintiffs' use of their barn. Defendants-counterplaintiffs-appellants (defendants) counterclaimed for injunctive relief, alleging encroachment by the barn upon their property and also seeking to quiet title, alleging abandonment of an old roadway which is located between the parties' prop-

erty. The parties are abutting landowners, each owning property up to the center section line. An abandoned county road, now overgrown, roughly parallels the north-south center section line. At a trial to the bench, the court found that the old roadway had been abandoned and because of the nature of the deed of dedication and adverse possession, the abandoned roadway should be divided at its middle and the halves awarded to the respective abutting landowners.

The dispute traces its origin to an 1876 document entitled "Deed of Dedication for a Public Highway," executed by Mary E. Homan. Defendants are Mary Homan's successors in title, and the disputed tract of land lies wholly in defendants' chain of title. The legal description contained in the 1876 deed of dedication is ambiguous and purports to convey 30 feet on each side of the center section line. However, the evidence adduced at trial demonstrates that Mary Homan owned no interest in any property west of the center section line. It is therefore apparent that Mary Homan was intending to convey by deed of dedication the 60 feet immediately east of the center section line. When the old roadway was actually laid, it was located entirely east of the center section line. The western boundary of the old roadbed was located and measured to be 50 feet east of the center section line. The trial court held that the strip of land located between the center section line and the old roadbed had vested in the plaintiffs by way of adverse possession and upon abandonment of the old roadbed by the county, half of the old roadbed was vested in the plaintiffs and the remaining half in the defendants. Therefore, plaintiffs' barn which lay in part across the center section line was not an encroachment upon defendants' property.

The broad question presented is whether the 1876 Homan deed of dedication is in the nature of an easement or whether, the deed of dedication conveyed the strip of land in question in fee simple. If an easement, as claimed by defendants, upon abandonment of the roadway by the county, then it would revert to the conveyor's successors in title, the defendants. On the other hand, if, as the plaintiffs claim, the conveyance was in the nature of a fee, then upon abandonment of the roadway, it would vest equally between the parties. The parties raise numerous subsidiary issues, but in view of our holding we need not address all issues raised.

While the record demonstrates that the deed of dedication was recorded, apparently no plat was prepared or recorded. Section 2 of "An Act to revise the law in relation to plats" (Ill. Rev. Stat. 1979, ch. 109, par. 2) sets forth the requirements for a statutory dedication of land for public highway purposes. Those elements necessary for a

statutory dedication include preparation of a plat by a surveyor which is certified by the surveyor and acknowledged by the owner of the land, the recording of the plat, the certificate, and the acknowledgment in the recorder's office of the county in which the land is situated. It appears that these requirements have basically remained unchanged since 1874.

■ A statutory dedication is created by a particular form of the instrument recorded, while a common law dedication may be by a grant or other written instrument or may be evidenced by acts and declarations without a writing. (*Hooper v. Haas* (1928), 332 Ill. 561, 164 N.E. 23.) As relevant to the case at bar, the important distinction between the two types of dedication is that by statutory plat the fee to the premises purported to be conveyed is vested in the public, subject to its acceptance, while under a common law plat the fee of the tract purported to be conveyed remains in the dedicator, burdened only with an easement over the way in question and subject to the acceptance of the easement by the public. (*Clokey v. Wabash Ry. Co.* (1933), 353 Ill. 349, 187 N.E. 475.) If the 1876 Homan deed of dedication is a common law dedication or easement, upon vacation, the grantor or his successor in title continues to hold title as before and the property is simply disencumbered of the easement. *Kennedy v. Town of Normal* (1934), 359 Ill. 306, 194 N.E. 576.

■ Both the plaintiffs and the trial judge placed heavy emphasis on *Prall v. Burckhartt* (1921), 299 Ill. 19, 132 N.E. 280. In *Prall*, the court noted that at common law the dedication of a street or roadway passed merely an easement but that in 1833, the legislature enacted the Plat Act which provided that by statutory dedication the grantor could convey a fee title to the governmental entity for street or roadway purposes. However, subsequent to enactment of the Plat Act, upon vacation of streets or roadways dedicated by plat, frequent litigation arose as to what became of the title of the land when the streets or roadways were vacated. The court in *Prall* held that by the making and recording of the plat in statutory form, the dedicator granted title to the street or roadway in fee so long as used for public purposes, but upon condition that should the street or roadway be vacated, then the title would pass to the then owners of the lots abutting thereon. The court reasoned that after the dedicator had executed and recorded the plat in conformity with the statute and there had been an acceptance, the dedicator had neither a reversion nor a possibility of reverter in the streets. As applied to the instant case, the trial court relied on *Prall*, holding that the Homan deed conveyed fee simple to the county and based upon *Prall*, upon vacation, the

roadway would be split among the abutting landowners. However, we consider *Prall* to be factually inapposite as *Prall* dealt only with statutory dedications and compliance with the Plat Act. Here there was no compliance with the Plat Act and the deed was one of a common law dedication. *Prall* stands for the proposition that a statutory dedication conveys the fee and upon vacation the property may be divided among the abutting landowners. However, *Prall* did not alter the converse situation that where the conveyance is in the form of a common law dedication, upon vacation the property is disencumbered of the easement and reverts to the original titleholders or their successors in interest. As applied to the case at bar, the Homan deed was a common law dedication and upon abandonment of the old roadway, the title reverted to the defendants as Mary Homan's successors in title.

Our attention is directed to section 1(b)(6) of "An Act to revise the law in relation to plats" (Ill. Rev. Stat. 1979, ch. 109, par. 1(b)(6)) (the Plat Act) as authority that fee simple title for highway purposes may be conveyed by deed. That section provides: "(b) The provisions of this Act do not apply and no plat is required in any of the following instances: *** 6. The conveyance of land for highway or other public purposes or grants or conveyances relating to the dedication of land for public use or instruments relating to the vacation of land impressed with a public use." However, that provision was not enacted until 1959 and only appears to be a codification in part of the common law rule in which there existed three ways in which a public highway could be established: (1) by condemnation in the mode prescribed by the statute; (2) by grant, which may be established by producing the deed making the grant, or by long continued use for the statutory period which implies a previous grant (prescription); and (3) by dedication to the public by the owner of the soil. (*Koch v. Mraz* (1929), 334 Ill. 67, 165 N.E. 343; *Grube v. Nichols* (1864), 36 Ill. 92.) Therefore, while it has long been possible to establish a public highway via a deed, it appears that at common law a conveyance by deed for a public highway constituted a common law dedication.

■ We are also aware of section 9—127 of the Illinois Highway Code (Ill. Rev. Stat. 1979, ch. 121, par. 9—127) which provides: "Except in cases where the deed, or other instrument, dedicating a highway or part thereof, has expressly provided for a specific devolution of the title thereto upon the abandonment or vacation thereof, whenever any highway or any part thereof is vacated under or by virtue of any Act of this State or by the highway authority authorized to vacate the highway, the title to the land included within the highway or part thereof so vacated, vests in the then owners of the land abutting

thereon, in the same proportions and to the same extent, as though the highway had been dedicated by a common law plat (as distinguished from a statutory plat) and as though the fee of the highway had been acquired by the owners as a part of the land abutting on the highway." Identical language to that provision is found in section 11—91—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 11—91—2) which was construed by the court in *Grimmig v. Ferris* (1979), 79 Ill. App. 3d 546, 399 N.E.2d 141. The court in *Grimmig* found that the statute in question did not alter the common law rule that the grantor retains title to dedicated property subject to an easement in favor of a governmental entity, unlike a statutory dedication where fee simple title would be vested in the public upon acceptance. We concur with the holding in *Grimmig* and conclude that the highway provision code does not alter the rule that upon vacation of a common law dedication, the easement is merely extinguished and the parcel remains in the grantor or his successor in title.

██ █ The trial court erred in determining that the strip of land located between the north-south center section line and the actual location of the old roadbed was vested in the plaintiffs by way of adverse possession. To constitute adverse possession there must be a hostile, actual, visible, notorious, exclusive and continuous possession under claim of ownership, implying an assertion of ownership adverse to that of the true owner and all others. (*Hunsley v. Valter* (1958), 12 Ill. 2d 608, 147 N.E.2d 356.) Plaintiffs have demonstrated no claim of adverse possession as the record demonstrates that plaintiffs were completely unaware of any claim they might have to the strip until the outbreak of hostilities in 1977. Further, the evidence shows that Elmer Sass, one of the defendants, has paid the taxes on that strip of land since at least 1965, and there was also substantial evidence that Elmer Sass had permissively allowed plaintiffs' predecessor in title to farm that strip of ground to avoid its being weeded over. Moreover, adverse possession would also have had to run against the county, and the long-established rule is that adverse possession will not lie as against a public entity regarding the dedication of streets and highways for use by the public. *Russell v. City of Lincoln* (1902), 200 Ill. 511, 65 N.E. 1088.

It has often been said that law will look one way and equity will look the other. Even though we have concluded that the Homan deed was in the form of a common law dedication or easement and that the fee reverted to Homan's successor in title upon extinguishment, we do not believe that plaintiffs should be required to remove the encroaching barn. It is established that if an encroachment is uninten-

tional and the cost for removing it is great, and the corresponding benefit to the adjoining landowner is small and damages can be had at law, courts will ordinarily refuse to grant injunctive relief and not require the offending party to remove the encroachment. (*Stroup v. Codo* (1965), 65 Ill. App. 2d 396, 212 N.E.2d 518; *Cammers v. Marion Cablevision* (1975), 26 Ill. App. 3d 176, 325 N.E.2d 62.) We conclude that the evidence is sufficient to demonstrate that plaintiffs' encroachment was unintentional. In *Stroup*, the court stated:

"In order for an encroachment to be intentional, it must be deliberate in the sense that the owner either proceeded to construct after notice of the encroachment, or that in ascertaining the boundary \*\*\* he so failed in the exercise of any appreciable precaution as to indicate a wilful disregard of the rights of the owner. [Citations.] The mere showing that the encroachment exists does not establish that it was intentional." *Stroup v. Codo* (1965), 65 Ill. App. 2d 396, 401, 212 N.E.2d 518, 520.

While there is some dispute as to the extent of the notice which plaintiffs had, we conclude that there has been no showing of a wilful disregard of the rights of the defendants. We also note that the evidence demonstrates that the cost of removing the encroachment would be substantial and that the corresponding benefit to the defendants would be small. The 30-foot strip of land had been appraised to be worth only $700 and damages are available to the defendants at law. Therefore, this case will be remanded to the circuit court of Adams County to ascertain damages to which the defendants are entitled and otherwise to fashion an equitable solution of the dispute.

In view of the foregoing considerations, the judgment of the trial court is reversed and remanded with directions.

Reversed and remanded with directions.

GREEN and LEWIS, JJ., concur.